# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 17-1493-M
A 2005 Subaru Legacy hatchback, bearing Pennsylvania )
registration KMV-8717, VIN# 4S4BP62C857351473 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
A 2005 Subaru Legacy hatchback, bearing Pennsylvania registration KMV-8717, VIN# 4S4BP62C857351473

located in the _____Eastern_____ District of _____Pennsylvania_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See attachment "A" incorporated here

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 922(g)(1) | Felon in posession of a firearm |

The application is based on these facts:
See Attached Affidait

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Charles W. Bowman, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ____11/06/2017____         _____
                                  *Judge's signature*

City and state: Philadelphia, PA         U.S. Magistrate Judge THOMAS J. RUETER
                                          *Printed name and title*

# AFFIDAVIT

## I. INTRODUCTION

**I, Charles Bowman, being duly sworn, depose and state as follows:**

### A. BACKGROUND

1.  I am a Special Agent for the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since August 2004. I am currently assigned to ATF Philadelphia Firearms Enforcement Group whose primary responsibilities include investigating individuals and/or groups who commit violations of Federal firearms laws with respect to the illegal possession, use, receipt, transfer, or transportation of firearms. Previously, I was assigned to the Reading Field Office, ATF "222 Corridor" Gang Task Force in Lancaster City, Pennsylvania, whose responsibilities included investigating violent gangs engaged in firearms and narcotics violations. Also, I was previously detailed to the ATF High Intensity Drug Trafficking Area (HIDTA) Task Force in Philadelphia whose responsibilities include investigating violent organizations that are engaged in the distribution of narcotics. During my tenure as an ATF Agent, I have participated in and personally conducted investigations involving violations of these laws, and applied for and executed numerous Federal search warrants that seized evidence in accordance with the probable cause set forth in the affidavits.

2.  The information contained in this affidavit is known to me personally or has been relayed to me by other law enforcement officers, or individuals assisting law enforcement officers, as indicated below. Because this affidavit is being submitted for the limited purpose of securing authorization to search a **2005 Subaru Legacy hatchback, bearing Pennsylvania**

1

**registration KMV-8717, VIN# 4S4BP62C857351473**, herein referred to as the [TARGET VEHICLE], I have set forth only the facts that I believe are necessary to establish probable cause.[1]

3.   On November 2, 2017, the TARGET VEHICLE was used by Namir WHITE a/k/a "Na" and Darrell WYLIE a/k/a "Rell" to meet an ATF confidential informant, whom WHITE and WYLIE robbed at gunpoint of $3,200 which ATF had supplied the informant to purchase firearms from WYLIE and WHITE. The TARGET VEHICLE, which was seized shortly after the armed robbery and has been maintained securely in ATF custody, is thus a crime scene. WYLIE was arrested and is charged by complaint and warrant in this Court as a felon in possession of a firearm. The loaded firearm that he used to rob the confidential informant was seized from him upon his arrest; he also possessed 20 bags of apparent heroin packaged and branded for resale. WHITE has been arrested and is charged by complaint and warrant in this Court for possession of a firearm by a convicted felon on a previous occasion, when he sold a firearm to an ATF confidential informant. This affidavit is submitted in support of a search warrant which is requested for the TARGET VEHICLE.

II.   INVESTIGATION

4.   On November 2, 2017, Bureau of Alcohol, Tobacco, Firearms, & Explosives (ATF) agents and task force officers, working with a registered ATF Confidential Informant, hereinafter referred to as CS-1, attempted to conduct a controlled purchase of three firearms from Namir WHITE a/k/a "Na" and Darrell WYLIE a/k/a "Rell."[2] However, CS-1 was robbed by WYLIE

---

[1] This vehicle is registered to Dominique Nicole Washington, 272 Wabash Ave, Lansdowne, PA. Washington is the wife of Namir WHITE

[2] A "controlled purchase" is when investigators use an undercover officer and/or a confidential informant to purchase evidence, such as a firearm, from subjects of an investigation. Audio/Video electronic surveillance equipment is used to record the transaction and physical surveillance is conducted by investigators.

and WHITE for $3,200 in government funds, all $20 bills. Prior to the attempted purchase, CS-1 informed agents WHITE and WYLIE had three guns for sale. Subsequently, CS-1 met with investigators at the ATF offices and placed consensually recorded/monitored telephone calls to both WYLIE and WHITE to confirm the gun deal. Ultimately, WYLIE and WHITE offered to sell CS-1 three firearms for $3,200. WHITE identified the firearms as a Taurus pistol, FN pistol, and a "Smith," known to investigators as a Smith & Wesson. WYLIE and WHITE arranged to meet CS-1 at the McDonald's at Broad Street and Girard Avenue ("Broad and Girard") in Philadelphia, Pennsylvania.

5. That afternoon, an ATF task force officer (TFO) initiated fixed surveillance at 1511 North 7th Street. A short time later, the TFO observed WHITE walk out of 1511 North 7th Street in Philadelphia carrying a red bag, walk over to the TARGET VEHICLE, and open the rear hatch. Moments later, the TFO observed WYLIE also walk out of 1511 North 7th Street and get into the same TARGET VEHICLE. About a minute later, the TARGET VEHICLE left the area travelling northbound on 7th Street and westbound on Oxford Street. Agents and TFO's then set up in surveillance positions in the area of Broad and Girard. Meanwhile, agents travelled with CS-1 in an undercover law enforcement vehicle to the area of Broad and Girard to conduct the controlled purchase.[3] Agent Bowman provided CS-1 with $3,200 in government funds to purchase the three firearms from WHITE and WYLIE.

6. CS-1, while electronically monitored, then walked toward the McDonald's to meet with WYLIE and WHITE. In summary, CS-1 was greeted by WYLIE at Girard Avenue and Watts Streets. They got into the TARGET VEHICLE, parked on Watts Street, which was

---

[3] While at the ATF offices, CS-1 was searched with negative results for contraband and cash, and outfitted with audio/video recording equipment.

3

being driven by WHITE. A review of the audio/video recording revealed that, inside the TAGRET VEHICLE, CS-1 gave WHITE the $3,200 cash for the guns. WHITE counted the money. WYLIE tried to give CS-1 a bag with no firearms in return; CS-1 argued to get the money back; and WYLIE refused to return it. The TARGET VEHICLE then made a quick left on a side street. WYLIE then stepped out of the TARGET VEHICLE and told CS-1 "...the cash is ours Lil...get up out of the car Lil before I have to pop you with this jawn..." CS-1 told investigators WYLIE pointed a gun at him/her. CS-1 then got out of the TARGET VEHICLE and WHITE drove off. CS-1 was then picked up by investigators.[4]

6. Agents followed the TARGET VEHICLE and arrested WHITE at a gas station on Broad Street. Subsequently, agents arrested WYLIE walking at 8th and Master. Recovered from WYLIE was Springfield, Model XDS, .45 caliber pistol, serial number XS687260, loaded with six live rounds of ammunition in the magazine and one live round in the chamber. WYLIE also had 20 packets of suspected heroin stamped "WARNING," packaged for distribution, the $3,200 cash taken from CS-1, and other items[5].

7. In sum, WYLIE and WHITE decided to rob CS-1 of the money he brought to the firearms sale they had offered him, and to not sell the Taurus pistol, Smith & Wesson pistol, and FN pistol they had described and offered to him. Investigators believe those guns could be stored inside the TARGET VEHICLE, where WYLIE and WHITE committed the robbery. As discussed above, WYLIE was arrested soon afterwards in possession of a Springfield .45 caliber pistol. WHITE, who was arrested after driving the TARGET VEHICLE away from the robbery,

---

[4] Once back at the ATF offices, CS-1 was search with negative results for money or contraband, and debriefed.
[5] Per Philadelphia Police Department policy, the suspected heroin cannot be field tested due to possible fentanyl laced. The cash was re-rubber banded and all $20 dollar bills, identical to the government funds.

4

previously sold a firearm to CS-1 in another controlled purchase in August of this year, for which WHITE is charged in this Court. WHITE and WYLIE each have two previous felony convictions for Possession with Intent to Deliver a Controlled Substance in the Commonwealth of Pennsylvania; and are both therefore prohibited from possessing a firearm or ammunition.

8. Based on my training and experience, I know that vehicles used in the commission of gun sales or attempted gun sales may contain instrumentalities of the criminal activity. In this case, the TARGET VEHICLE was used as a conveyance to sell three guns but was ultimately used to instead rob CS-1, and may contain valuable evidence such as additional firearms that were not sold, other firearms parts or accessories such as gun boxes, magazines and ammunition, the red bag observed by investigators, cell phones, and other items that may be valuable to the investigation of WHITE and WYLIE's firearms trafficking and possible heroin distribution. (As noted above, WYLIE was found in possession of suspected heroin, packaged for distribution, and both he and WHITE each have two prior convictions for drug trafficking. Firearms are common tools of the drug trafficking trade.) The TARGET vehicle may also contain other evidence of narcotics trafficking such as packaging material and other items of drug paraphernalia.

8. Given the facts and circumstances set forth above, your affiant avers there is sufficient probable cause to search TARGET VEHICLE, for violations of Title 21 U.S.C. 841(a)(1) – distribution of controlled substances, and Title 18 U.S.C. § § 922(g)(1)(felon in

5

possession of firearms) and 922(1)(1)(A)(unlicensed dealing in firearms), for evidence which is detailed in Attachment A in the search warrant.

*[signature]*

Charles W. Bowman
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF)

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 6th Day
DAY OF November 2017

*[signature]*

HONORABLE THOMAS J. RUETER
U.S. Magistrate Judge

6

## **ATTACHMENT A**

### **PROPERTY TO BE SEIZED**

1. Firearms, ammunition

2. Firearm boxes, magazines, firearm parts and accessories, firearms transaction records; and boxes, bags, or other items used to store or conceal firearms for transportation or otherwise.

3. Illicit narcotics, Drug paraphernalia such as, but not limited to, cutting agents, scales and packaging materials.

4. Cash (U.S. Currency), records, invoices, receipts, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys, money wrappers, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of proceeds obtained from the unlawful sale of firearms and narcotics.

5. Cellular telephones (including searching the memory thereof), telephone answering machines; including cell phone toll records, subscriber records.

6. Photographs, records and documents, including still photographs, negatives, video tapes, films, undeveloped film and the contents therein, slides, and any video, recording or photographic equipment containing the aforementioned items, containing information regarding the identities of coconspirators or those involved in illegal firearm and narcotics trafficking; that may also include photographs of firearms.

7. Address and/or telephone books, Rolodex indices, and any papers or records reflecting names, addresses, telephone numbers, pager numbers, facsimile numbers and/or telex numbers of co-conspirators, sources of firearms, and firearm customers.

All of which constitute fruits, evidence and/ or instrumentalities of violations of Title

18, United States Code, Section, 922(g)(1), 922(A)(1)(a), and Title 21, United States Code, Section 841.